UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EUGENE SCALIA, Secretary of Labor, United States Department of Labor,<br><br>    Plaintiff,<br><br>    v.<br><br>F.W. WEBB COMPANY,<br><br>    Defendant. | Civil Action No.<br><br>Injunctive Relief Sought |

## COMPLAINT

1. Plaintiff Eugene Scalia, Secretary of Labor, United States Department of Labor (the "Secretary"), brings this action because Defendant F.W. Webb Company ("Defendant" or "Webb") has misclassified its inside salespersons as exempt from the overtime pay requirements of the Fair Labor Standards Act of 1938 (the "FLSA"), and has unlawfully retaliated against employees under that statute.

2. The Secretary principally seeks to have the Court: (a) enjoin Webb from withholding overtime wages that Webb failed to pay to employees under Sections 7, 15(a)(2), and 17 of the FLSA, 29 U.S.C. §§ 207, 215(a)(2), and 217; (b) award punitive damages for Webb's unlawful retaliation against employees in violation of Section 15(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), which relief is recognized by Section 16(b), 29 U.S.C. § 216(b); and (c) enjoin Webb from further violating the FLSA.

3. This Complaint covers the following time periods: (a) April 9, 2017 to April 6, 2019, which is the period of time covered by the Secretary's investigation of Webb; and (b) after April 6, 2019 to the extent that Webb has violated Sections 7, 11, 15(a)(2), 15(a)(3), and/or

15(a)(5) of the FLSA, 29 U.S.C. §§ 207, 211, 215(a)(2), 215(a)(3), and/or 215(a)(5), after April 6, 2019 (together, the "Complaint Timeframe").

## Jurisdiction and Venue

4. Jurisdiction of this action is conferred upon this Court by Section 17 of the FLSA, 29 U.S.C. § 217, and by 28 U.S.C. § 1331.

5. Venue is proper in the United States District Court for the District of Massachusetts because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district and because Webb is a Massachusetts corporation with a principal place of business in Bedford, Massachusetts.

## The Parties

### *Plaintiff Secretary of Labor*

6. The Secretary is vested with the authority to file suit to restrain violations of the FLSA, restrain the withholding of back wages for overtime violations, and recover damages for unlawful retaliation, and he is the proper plaintiff for this action.

7. This action follows the Secretary's investigation of Webb, performed by the United States Department of Labor, Wage and Hour Division (the "U.S. DOL Investigation"), covering the period from April 9, 2017 to April 6, 2019 (the "Investigation Period").

8. The U.S. DOL Investigation found that during the Investigation Period Webb failed to pay the required overtime rates to approximately 500 inside salespersons who worked at the Webb locations listed on the attached Exhibit A (the "Locations").

### *Defendant Webb*

9. Webb is a corporation with a principal office at 160 Middlesex Turnpike, Bedford, Massachusetts, within the jurisdiction of this Court.

10. Webb is engaged at that location in Bedford and elsewhere primarily as a wholesale company in the business of producing sales of plumbing, heating, cooling, PVF (pipes, valves, and fittings), industrial products, and other related fixtures and equipment (the "Products").

11. Webb operates more than 90 locations in nine states—Massachusetts, Connecticut, Rhode Island, New Hampshire, Vermont, Maine, New York, New Jersey, and Pennsylvania.

12. Webb's primary business function is to produce sales of the Products to customers.

13. Manufacturing and/or creating the Products is not Webb's primary business function.

14. Webb generally does not create or manufacture the Products that its sells to its customers.

15. Webb sells the Products primarily to residential and mechanical contractors, mechanical engineers, facility managers, and other professionals in the fields of construction, facility/building maintenance, and infrastructure.

16. During the Complaint Timeframe, Webb has employed inside salespersons, at its Locations, including in the position of "Inside Sales Representative" (collectively, the "Inside Salespersons").

17. The Inside Salespersons customarily and regularly worked onsite at Webb's Locations.

18. During the Investigation Period, Webb employed more than 500 Inside Salespersons at its Locations.

### Defendant Is an Enterprise Engaged in Commerce

19. During the Complaint Timeframe, Webb was an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r), as it engaged in related activities performed through unified operation or common control for a common business purpose.

20. Webb employed the Inside Salespersons in the activities of said enterprise, which is engaged in commerce or in the production of goods for commerce, including having employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

21. The Inside Salespersons sold the Products to Webb's customers in all nine states where Webb had Locations.

22. The Products that Webb's Inside Salespersons sold from the Locations had moved in or were produced for commerce.

23. Defendant's enterprise has had an annual gross volume of sales made or business done in an amount not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated).

24. During the Complaint Timeframe, Defendant's employees have been employed in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s) of the FLSA, 29 U.S.C. § 203(s).

### The Inside Salespersons Covered by this Complaint

25. The allegations and claims in this Complaint cover all of Webb's Inside Salespersons at the Locations during the Complaint Timeframe.

26. The allegations and claims in this Complaint are limited to Inside Salespersons, as defined above.

27. This Complaint does not encompass any claims for unpaid wages that may have arisen prior to April 9, 2017.

## Defendant's Wage and Hour Practices

*Defendant Misclassified Inside Salespersons as Exempt from Overtime Pay*

28. Defendant has misclassified its Inside Salespersons as exempt under Section 13(a)(1) of the FLSA, 29 U.S.C. § 213(a)(1).

29. Defendant's failure to properly treat Inside Salespersons as non-exempt deprived those employees of their rights under the FLSA. Webb should have treated the Inside Salespersons as non-exempt employees under the FLSA, which would have resulted in the Inside Salespersons being covered by, among other things, the FLSA's overtime provision, *see* 29 U.S.C. § 207.

*Inside Salespersons*

30. During the Complaint Timeframe, the primary duty of Webb's Inside Salespersons was to produce sales of the Products to Webb's customers.

31. Inside Salespersons most commonly made the aforementioned sales one customer order at a time.

32. For example:

    a. Inside Salespersons sold the Products primarily to contractors, engineers, and professionals in the fields of construction, facility/building maintenance, and infrastructure.

    b. Inside Salespersons received sales inquiries by phone, email, or in person.

  c. Inside Salespersons identified whether the Product(s) requested by customers were in stock and if so at which of Webb's Location(s) the Product(s) could be found.

  d. If a Product was not in stock, Inside Salespersons attempted to locate and purchase the Product from one of Webb's vendors.

  e. Inside Salespersons produced price quotes and bids to customers for the customers' approval.

  f. Inside Salespersons received and processed orders from customers.

  g. Inside Salespersons sometimes worked as a salesperson at the sales counter at Webb's Locations.

  h. Inside Salespersons created internal transfers/split orders between/among various Webb Locations.

  i. Inside Salespersons scheduled and managed customer deliveries.

  j. If requested by a customer, Inside Salespersons provided Product information or identified potential Products to purchase as part of the process of generating a sale.

33. The prices for stock items sold by Inside Salespersons was based on a price list or formula that was determined by Webb.

34. Inside Salespersons could only deviate from the price list for stock items in predetermined circumstances (such as a large-quantity order or high-volume customer), using a predetermined range or formula, or otherwise with supervisory approval.

35. During the Investigation Period, Webb's qualifications for the Inside Sales Representative position:

    a. Required that employees and position candidates possess a "strong sales aptitude," and

    b. Preferred that employees and position candidates possess previous industrial sales experience.

36. The Inside Salespersons' primary duty of generating sales of the Products was not directly related to the management of Webb.

37. The Inside Salespersons' primary duty of generating sales of the Products was not directly related to the management of Webb's customers.

38. The Inside Salespersons' primary duty of generating sales of the Products was not directly related to the general business operations of Webb.

39. The Inside Salespersons' primary duty of generating sales of the Products was not directly related to the general business operations of Webb's customers.

40. The Inside Salespersons' primary duty of generating sales of the Products was not focused on building Webb's business in general.

41. The Inside Salespersons' primary duty of generating sales of the Products was not focused on servicing Webb's sales in general.

*Defendant Failed to Pay Inside Salespersons the Required Overtime Premium*

42. Webb failed to properly compensate Inside Salespersons for the hours they worked in excess of 40 hours per week. Specifically, Webb paid those Inside Salespersons at rates less than one and one-half times the regular rates at which those Inside Salespersons were employed in weeks when they worked in excess of 40 hours.

43. During the Investigation Period, Webb failed to pay the required overtime rates to approximately 500 Inside Salespersons who worked at the Locations.

44. During the Investigation Period, Inside Salespersons worked on average 45 hours or more per week. Inside Salespersons averaged five, nine-hour days per week during weekdays (Monday through Friday).

45. During the Investigation Period, many Inside Salespersons worked an additional Saturday shift in some weeks. The Saturday shifts were three to four hours in duration and the frequency of such shifts varied by employee, ranging in frequency from two times per month to three times per year.

46. Examples of workweeks when Webb failed to pay Inside Salespersons the required overtime premium under the FLSA include the following:

    a. One Inside Salesperson worked approximately 49 hours, which included Saturday work, at Webb's Hingham, Massachusetts location, in the workweek that ended March 23, 2019, and did not receive the overtime pay required by the FLSA;

    b. A second Inside Salesperson worked approximately 45 hours at Webb's Nashua, New Hampshire location, in the workweek that ended February 16, 2019, and did not receive the overtime pay required by the FLSA;

    c. A third Inside Salesperson worked approximately 49 hours, which included Saturday work, at Webb's Albany, New York location, in the workweek that ended January 26, 2019, and did not receive the overtime pay required by the FLSA;

d. A fourth Inside Salesperson worked approximately 49 hours, which included Saturday work, at Webb's Ellsworth, Maine location, in the workweek that ended December 1, 2018, and did not receive the overtime pay required by the FLSA;

e. A fifth Inside Salesperson worked approximately 45 hours at Webb's Methuen, Massachusetts location, in the workweek that ended October 27, 2018, and did not receive the overtime pay required by the FLSA; and

f. A sixth Inside Salesperson worked approximately 49 hours, which included Saturday work, at Webb's Warwick, Rhode Island location, in the workweek that ended August 25, 2018, and did not receive the overtime pay required by the FLSA.

*Defendant Failed to Maintain Records Required by the FLSA*

47. Webb violated the FLSA by failing to make, keep, and preserve adequate and accurate records for Inside Salespersons at the Locations outside of Maine.

48. Specifically, Defendant's records failed to show adequately and accurately, among other things, any record of hours worked by the Inside Salespersons outside of Maine.

Defendant Unlawfully Discriminated Against Employees

49. Webb unlawfully discriminated against employees who engaged in protected activity during the U.S. DOL Investigation. Specifically, Defendant's Chief Operating Officer, Bob Mucciarone, sent emails to employees on January 10, 2018, February 28, 2018, and March 12, 2019, which, among other things, instructed employees to inform Webb if the Secretary's representatives contacted them for information as part of the U.S. DOL Investigation.

50. Those email messages deterred and chilled employees from speaking freely to the Secretary's representatives and participating in the U.S. DOL Investigation.

51. Webb sent the January 10, 2018 email to a group of approximately 50 inside sales employees, which included Inside Salespersons.

52. Defendant sent the February 28, 2018 email to a listserv for inside sales employees, which included Inside Salespersons.

53. Webb sent the March 12, 2019 email to a listserv for inside sales employees, which included Inside Salespersons, and a listserv for estimator employees, which included individuals who worked as Commercial HVAC Estimators and Commercial Plumbing Estimators.

*Protected Activity*

54. Defendant sent the January 10, 2018, February 28, 2018, and March 12, 2019 emails to employees who had spoken or were about to speak to the Secretary's representatives as part of the U.S. DOL Investigation of Webb.

55. Mr. Mucciarone directed the January 10, 2018, February 28, 2018, and March 12, 2019 emails to employees who Defendant knew or had reason to believe had been contacted or were likely to be contacted by the Secretary's investigators. Mr. Mucciarone referred to the Secretary's efforts to speak to employees as part of the U.S. DOL Investigation as follows:

    a. In the January 10, 2018 email: "They would like to speak to some employees with the job description of 'Inside Sales.' As a result you may be contacted or you may have already been contacted by phone or by letter."

b.  In the February 28, 2018 email: "We had thought we were in the final stages weeks ago, but it appears more notifications may have gone out again. It appears they are still concentrating on inside sales positions."

c.  In the March 12, 2019 email: "This has been going on for over a year. We had thought they were done and now we hear of more notifications going out to Webb employees. I write to you so you will be aware should you receive a notification."

*Adverse Action*

56. Webb's emails to employees on January 10, 2018, February 28, 2018, and March 12, 2019 constituted adverse actions against those employees in that the communications well might have dissuaded a reasonable worker, including employees who received those emails, from speaking freely to the Secretary's investigators about their employment or from otherwise engaging in protected activity.

57. In the January 10, 2018, February 28, 2018, and March 12, 2019 emails, Mr. Mucciarone referred to the Secretary's efforts to speak to employees as part of the U.S. DOL Investigation, and instructed employees, in relevant part, as follows:

a.  In the January 10, 2018 email: "If they do contact you please let us know, so we can track how many employees have been asked to be interviewed."

b.  In the February 28, 2018 email: "If you have been contacted, please let Ruth or myself know so we can track how many people have been contacted."

c.  In the March 12, 2019 email: "If you have been contacted, please let Ruth or myself know so we can track who has been contacted."

11

58. Webb's emails to employees on January 10, 2018, February 28, 2018, and March 12, 2019 did in fact dissuade employees from speaking freely to the Secretary's investigators during the U.S. DOL Investigation.

59. Employees could have and/or did reasonably believe because of the email(s) that:

    a. Webb did not want employees to speak with the Secretary's investigators as part of the U.S. DOL Investigation;

    b. Webb was tracking employees' communications with the Secretary's representatives;

    c. Employees could suffer negative consequences if they participated in the U.S. DOL Investigation; and/or

    d. Employees could suffer negative consequences if they did not comply with Webb's instruction to inform Webb of any contact from the Secretary's representatives.

*Causation*

60. Webb sent the January 10, 2018, February 28, 2018, and March 12, 2019 emails to employees because they engaged in protected activity in that the employees who received the emails had spoken to or were about to speak to the Secretary's investigators as part of the U.S. DOL Investigation of Webb.

**COUNT ONE**
**Violation of Sections 7 & 15(a)(2) of the Act—Failure to Pay Overtime**

61. The Secretary incorporates by reference and re-alleges all of the foregoing allegations in this Complaint.

62. Webb violated the provisions of Sections 7 and 15(a)(2) of the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing employees for workweeks longer than 40 hours without

compensating them at rates not less than one and one-half times the regular rates at which they were employed for hours worked in excess of 40 hours in such workweeks.

63. Therefore, pursuant to Section 17 of the FLSA, 29 U.S.C. § 217, Defendant should be enjoined from withholding overtime wages that Webb failed to pay to employees who worked as Inside Salespersons.

## COUNT TWO
### Violation of Sections 11(c) & 15(a)(5) of the Act—Failure to Make & Keep Records

64. The Secretary incorporates by reference and re-alleges all of the foregoing allegations in this Complaint.

65. Defendant failed to keep true and accurate records of the hours that each of their non-exempt employees worked in violation of Section 11 of the FLSA, 29 U.S.C. § 211, and the regulations thereunder, specifically 29 C.F.R. Part 516.

## COUNT THREE
### Violation of Section 15(a)(3) of the Act—Unlawful Discrimination

66. The Secretary incorporates by reference and re-alleges all of the foregoing allegations in this Complaint.

67. Defendant has violated the provisions of Section 15(a)(3) of the Act, 29 U.S.C. § 215(a)(3), by unlawfully discriminating against employees by sending emails to those employees on January 10, 2018, February 28, 2018, and March 12, 2019, which well might have and did in fact dissuade reasonable employees from speaking freely to the Secretary's investigators about their employment as part of the U.S. DOL Investigation.

# PRAYER FOR RELIEF

During the period covered by this Complaint, Webb violated the aforesaid provisions of the FLSA as alleged. WHEREFORE, cause having been shown, the Secretary prays for judgment against Defendant as follows:

1. For an Order pursuant to Section 17 of the Act, 29 U.S.C. § 217, permanently enjoining and restraining Defendant, its officers, agents, servants, employees, and those persons in active concert or participation with Webb, from prospectively violating the Act, including Sections 7, 11, 15(a)(2), 15(a)(3), and 15(a)(5), 29 U.S.C. §§ 207, 211, 215(a)(2), 215(a)(3), and 215(a)(5);

2. For an Order under Section 17 of the Act, 29 U.S.C. § 217, enjoining and restraining Defendant, its officers, agents, servants, employees, and those persons in active concert or participation with Webb, from withholding payment of unpaid back wages found due to Defendant's employees, and prejudgment interest computed at the underpayment rate established by the Secretary of the Treasury pursuant to 26 U.S.C. § 6621;

3. For an Order awarding punitive damages related to Defendant's retaliatory actions under Section 15(a)(3) of the Act, 29 U.S.C. § 215(a)(3);

4. Awarding the Secretary the costs of this action; and

5. Granting such other and further relief as may be necessary and appropriate.

Kate S. O'Scannlain
Solicitor of Labor

Maia S. Fisher
Regional Solicitor

/s/ Scott M. Miller
Senior Trial Attorney
miller.scott.m@dol.gov
MA BBO No. 666509

U.S. Department of Labor
Attorneys for Plaintiff

Post Office Address:
JFK Federal Building—Room E-375
Boston, Massachusetts 02203
TEL: (617) 565-2500
FAX: (617) 565-2142
Boston Regional Office

DATED: July 31, 2020