UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EUGENE SCALIA, Secretary of Labor, United States Department of Labor, <br><br> Plaintiff, <br><br> v. <br><br> F.W. WEBB COMPANY, <br><br> Defendant. | * <br> * <br> * <br> * <br> * <br> * <br> *    Civil Action No. 20-cv-11450-ADB <br> * <br> * <br> * <br> * <br> * <br> * |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

BURROUGHS, D.J.

Plaintiff Eugene Scalia, Secretary of Labor, United States Department of Labor ("Plaintiff"), brings this action against Defendant F.W. Webb Company ("Webb"), seeking to enjoin Webb from withholding overtime wages and from violating the Fair Labor Standards Act of 1938 (the "FLSA"), and to recover punitive damages for Webb's alleged unlawful retaliation against its employees. [ECF No. 1 ¶¶ 1–2 ("Compl.")]. Currently before the Court is Webb's motion to dismiss Count III of the complaint, a claim for unlawful retaliation against employees. [ECF No. 9]. For the reasons set forth below, Webb's motion is DENIED.

I.  BACKGROUND

A.  Factual Background

For purposes of this Order, facts are drawn from the complaint, [Compl.], and interpreted in the light most favorable to Plaintiff. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011). As it must, the Court "accept[s] the truth of all well-pleaded facts and draw[s]

1

all reasonable inferences therefrom." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012).

### 1. The Parties

Plaintiff is the Secretary of Labor, United States Department of Labor ("DOL"), and is vested with authority to restrain violations of the FLSA. [Compl. ¶ 6]. Webb is a corporation, with its main office in Bedford, Massachusetts, that sells "plumbing, heating, cooling, PVF (pipes, valves, and fittings), industrial products, and other related fixtures and equipment" from more than ninety locations in multiple states. [Id. ¶¶ 9–11]. The DOL's Wage and Hour Unit launched an investigation into allegations of FLSA violations by Webb between April 9, 2017 and April 6, 2019 (the "Relevant Period"). [Id. ¶ 7]. During the Relevant Period, Webb employed more than 500 salespersons. [Id. ¶¶ 12–18]. Plaintiff filed this suit following the conclusion of its investigation.

### 2. Allegations of Misconduct

Plaintiff alleges in its complaint that during the Relevant Period, Webb: (1) failed to pay inside salespersons overtime wages as required by the FLSA; (2) retaliated against employees engaged in protected activity; and (3) failed to keep true and accurate records of the hours that non-exempt employees worked, in violation of the FLSA. [Compl. ¶¶ 62, 65, 67].

Among other tasks, salespersons employed by Webb sold products to customers, received and handled sales inquiries, attempted to purchase and procure products for customers if those products were out of stock, quoted prices to customers and handled bids, and scheduled and managed customer deliveries. [Compl. ¶ 32]. Webb determined the prices for stock items, with deviations requiring supervisor approval and allowed only along clear formulaic lines. [Id. ¶¶ 33–34]. Plaintiff maintains that the primary duty of salespersons employed inside Webb's

locations was not managerial, directly related to general business operations, or focused on building Webb's business in general. [Id. ¶¶ 36–41]. The complaint alleges that during the Relevant Period, salespersons worked forty-five hours or more per week, on average, and were not paid overtimes rates. [Id. ¶¶ 43–45]. Plaintiff also claims that Webb did not make, keep, and preserve adequate and accurate records (as required by the FLSA) of the hours worked by these salespersons. [Id. ¶¶ 47–48].

Additionally, and relevant to the instant motion, Plaintiff claims that Webb sent three emails to its salespersons that "deterred and chilled employees from speaking freely to [Plaintiff]'s representatives and participating in the U.S. DOL Investigation." [Compl. ¶ 50]. The three emails, which were sent to employees who Webb knew or had reason to believe had been contacted or would likely be contacted by the DOL or who had spoken or were about to speak to DOL representatives in the investigation, [id. ¶¶ 54–55], included: (1) a January 18, 2018 email sent to approximately fifty sales employees; (2) a February 28, 2018 email sent to a listserv for sales employees; and (3) a March 12, 2019 email sent to listservs for both sales employees and non-sales employees. [Id. ¶¶ 51–53].

All three emails asked employees to notify Webb representatives if the DOL contacted them, saying this was meant to help "track who has been contacted." [Compl. ¶ 57]. Plaintiff alleges that these three emails dissuaded employees from speaking freely to DOL investigators and that salespersons and other employees "could have and/or did reasonably believe," based on these emails, that they could suffer negative consequences if they participated in the DOL investigation. [Id. ¶¶ 58, 59].

### B.      Procedural Background

Plaintiff filed the complaint on July 31, 2020, bringing FSLA claims for failure to pay overtime (Count I), failure to make and keep adequate records (Count II), and unlawful retaliation (Count III). [Compl. ¶¶ 61–67]. On October 26, 2020, Webb moved to dismiss Count III of the complaint. [ECF No. 9]. Plaintiff filed his opposition on November 9, 2020, [ECF No. 11], and, on November 23, 2020, Webb filed its reply, [ECF No. 14].

## II.     LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 76, 80 (1st Cir. 2019). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The alleged facts must be sufficient to "state a claim to relief that is plausible on its face." Id. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales, 682 F.3d at 44–45 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández, 640 F.3d at 14). "The plausibility standard invites a two-step pavane." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (citing Grajales, 682 F.3d at 45). First, the Court "must separate the

complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

Notably, a complaint need not "establish a prima facie case at the pleadings stage." Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013).  Even where a defendant raises plausible innocent explanations for alleged discriminatory or retaliatory misconduct, the First Circuit has held that a plaintiff may proceed to discovery when they have "alleged sufficient facts to make the non-innocent explanation of these facts plausible." Rodriguez-Vives v. P.R. Firefighters Corps of P.R., 743 F.3d 278, 286 (1st Cir. 2014).

### III.  DISCUSSION

The FLSA makes it "unlawful . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA], or has testified or is about to testify in any such proceeding."  29 U.S.C. § 215(a)(3).  This provision, also referred to as the FLSA's antiretaliation provision, lays out the three elements of a retaliation claim: "(1) the plaintiff engaged in statutorily protected activity, and (2) his employer thereafter subjected him to an adverse employment action (3) as a reprisal for having engaged in the protected activity." Blackie v. Maine, 75 F.3d 716, 722 (1st Cir. 1996).

Webb argues that Count III of the complaint must be dismissed for three independent reasons.  First, because it fails to identify a statutorily protected activity.  [ECF No. 10 at 6–9]. Second, because it fails to allege that Webb took legally cognizable adverse action against its

employees. [Id. at 9–16]. Third, because it fails to allege a causal connection between a protected activity and an adverse action. [Id. at 16–19]. Plaintiff disputes all three assertions, claiming that employees who had either "testified or were about to testify" are protected from retaliation, [ECF No. 11 at 7–9], that Webb's actions "well might dissuade a reasonable worker from making or supporting a charge of an FLSA violation," [id. at 9], and that Webb's actions were taken in response to employees' actions, [id. at 13–14].

For the reasons detailed below, the Court finds that Plaintiff's allegations state an FLSA retaliation claim that is "plausible on its face," Twombly, 550 U.S. at 570, and Webb's motion to dismiss, [ECF No. 9], must therefore be DENIED.

### A.   Protected Activity

As a threshold matter, the Court agrees with Plaintiff that he has plausibly alleged that at least some of the employees who received Webb's emails engaged in protected activity under the FLSA. [ECF No. 11 at 7–8]. The FLSA protects any employee who "has filed any complaint" or "has testified or is about to testify" in a proceeding related to violations of the FLSA. 29 U.S.C. § 215(a)(3). Courts generally interpret both "file any complaint" and "testify" broadly. Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 14 (2011) (holding that oral complaints are protected activity under the FLSA so long as the complainant is making "an assertion of rights protected by the statute and a call for their protection"); Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 103 (1st Cir. 2004) (noting that to be protected under the FLSA, an employee need not file a formal complaint "with a court or agency" but must take action beyond mere "abstract grumblings" (quoting Valerio v. Putnam Assoc., Inc., 173 F.3d 35, 44 (1st Cir. 1999))); Miller v. Metro Ford Auto. Sales, Inc., 519 F. App'x 850, 851 (5th Cir. 2013) ("The ADEA and FLSA prohibit employers from discriminating against any

employee for filing complaints, *participating in investigations or other proceedings*, or otherwise opposing any practice made unlawful by these statutes." (emphasis added)); Scalia v. Unforgettable Coatings, Inc., 455 F. Supp. 3d 987, 991 (D. Nev. 2020) ("The FLSA expressly prohibits retaliation against any employee for *cooperating with an investigation* under the FLSA." (emphasis added)); Bowen v. M. Caratan, Inc., 142 F. Supp. 3d 1007, 1022–23 (E.D. Cal. 2015) (determining that individual who had been identified by DOL investigators as an interview subject was "about to testify").  Further, as discussed above, Plaintiff's burden at the pleading stage is minimal and he is not required to establish a prima facie case to survive a motion to dismiss.

Against this backdrop, Plaintiff's allegations regarding protected activity are sufficient. Specifically, Plaintiff has alleged that a DOL investigation regarding potential FLSA violations was ongoing at Webb and that some recipients of the three emails had spoken or were about to speak to DOL investigators in connection with that investigation.  Accordingly, Plaintiff has plausibly alleged that at least some employees were engaging in protected activity and has therefore met his burden at this stage with respect to the protected activity element of his retaliation claim.[1]

**B.     Adverse Action**

In a retaliation case, the complainant must "show that the employer took a materially adverse employment action against him."  Blackie, 75 F.3d at 725.  "Determining whether an action is materially adverse necessarily requires a case-by-case inquiry."  Id. (citing Walsh v.

---

[1] Webb seems to take issue with the fact that Plaintiff does not allege that each of the 500 employees who received the emails had engaged in protected activity.  [ECF No. 14 at 9]. Plaintiff has no obligation to allege that *every* recipient of the emails was engaging in protected activities to plausibly state an FLSA retaliation claim.

Derwinski, 14 F.3d 85, 86 (1st Cir. 1994)).  The parties dispute the correct standard for evaluating what constitutes a materially adverse action for purposes of the FLSA's antiretaliation provisions.  Compare [ECF No. 10 at 10 (Webb's position)], with [ECF No. 11 at 11 (Plaintiff's position)].  Webb relies primarily on Blackie, which provides examples of typical materially adverse actions such as "(1) tak[ing] something of consequence from the employee . . . or (2) withhold[ing] from the employee an accouterment of the employment relationship."  Blackie, 75 F.3d at 725; [ECF No. 10 at 9].  In response, Plaintiff maintains that Burlington Northern & Santa Fe Ry. Co. v. White, a Supreme Court case concerning the antiretaliation provisions of Title VII of the Civil Rights Act of 1964 ("Title VII"), provides the correct standard.  [ECF No. 11 at 9].  Under the test set forth in that case, whether an action is adverse depends on whether the action could "dissuade a reasonable worker" from engaging in protected activity.  Burlington, 548 U.S. 53, 57 (2006).  Plaintiff also avers that Blackie and Burlington do not, in fact, conflict, [ECF No. 11 at 11 n.5], and that even applying Blackie, the emails at issue here satisfy the standard for a materially adverse action, [id.].

Both parties agree that the First Circuit has not yet considered the Burlington standard in connection with an FLSA retaliation claim.[2]  [ECF No. 10 at 12; ECF No. 11 at 10 n.5].  Burlington has, however, informed First Circuit decisions regarding what constitutes a materially adverse action for the purposes of Title VII, Age Discrimination in Employment Act ("ADEA"),

---

[2] The Court notes that six other United States Courts of Appeals (Second, Fourth, and Eleventh circuits in published opinions, and the Fifth, Sixth, and Ninth circuits in unpublished opinions) have applied the Burlington standard to FLSA retaliation claims.  See Smith v. Haynes & Haynes, P.C., 940 F.3d 635, 648 (11th Cir. 2019); McBurnie v. City of Prescott, 511 F. App'x 624, 625 (9th Cir. 2013); Noack v. YMCA of Greater Hous. Area, 418 F. App'x 347, 353 (5th Cir. 2011); Pettit v. Steppingstone, Ctr. for the Potentially Gifted, 429 F. App'x 524, 531–32 (6th Cir. 2011); Mullins v. City of N.Y., 626 F.3d 47, 53 (2d Cir. 2010); Darveau v. Detecon, Inc., 515 F.3d 334, 342–43 (4th Cir. 2008).

and Americans with Disabilities Act ("ADA") retaliation claims.  See, e.g., Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 94–95 (1st Cir. 2018) (applying Burlington's definition of a materially adverse action to ADEA and Title VII retaliation claims); Colón-Fontánez v. Mun. of San Juan, 660 F.3d 17, 36–37 (1st Cir. 2011) (applying Burlington to an ADA retaliation claim).  Further, the First Circuit has stated that it "regard[s] Title VII, ADEA, ERISA, and FLSA as standing *in pari passu* and endorse[s] the practice of treating judicial precedents interpreting one such statute as instructive in decisions involving another."  Serapion v. Martinez, 119 F.3d 982, 985 (1st Cir. 1997); see, e.g., Camacho v. P.R. Ports Auth., 369 F.3d 570, 578 n.5 (1st Cir. 2004); Escribano-Reyes v. Prof'l. Hepa Certificate Corp., 817 F.3d 380, 388 n.3 (1st Cir. 2016).  This is particularly appropriate here where the Court sees no meaningful differences in the antiretaliation provisions of the ADA, ADEA, Title VII, and FLSA that would justify applying different standards.  Compare 29 U.S.C. § 215(a)(3) (FLSA), with 42 U.S.C. § 12203(a) (ADA), 29 U.S.C. § 623(d) (ADEA), and 42 U.S.C. § 2000e–3 (Title VII).  Accordingly, the Courts finds Burlington applicable and finds that a materially adverse action is one that "well might have dissuaded a reasonable worker from" engaging in protected activity.  Burlington, 548 U.S. at 67–68 (internal citations omitted).[3]

At the motion to dismiss stage, however, the question is solely whether Plaintiff has alleged facts that, taken as true and viewed in the most favorable light to him, Gilbert, 915 F.3d

---

[3] The Court notes that it does not see a conflict between this standard and the standard articulated in Blackie.  In Blackie, the First Circuit provided examples of typical adverse action but did not hold that those examples were the *only* actionable adverse action for FLSA purposes.  75 F.3d at 725.  That the list is non-exhaustive is confirmed by other statements in the First Circuit's opinion.  See id. ("Determining whether an action is materially adverse necessarily requires a case-by-case inquiry."); cf. id. at 723 (cautioning against the application of a "black-letter legal rule in a purely mechanical fashion, divorced from considerations of policy and logic" in FLSA cases).

at 76, plausibly suggest a materially adverse action. Plaintiff has met this burden. See Rodriguez-Reyes, 711 F.3d at 54 (noting that Plaintiff need not "establish a prima facie case at the pleadings stage"). His allegations and the emails' timing, content, and tone plausibly suggest that they might well dissuade a reasonable employee from engaging in protected activity,[4] and therefore constitute materially adverse action.

### C. Causation

Finally, a retaliation claim must demonstrate "a causal connection" between the retaliation and the protected activity. Kearney v. Town of Wareham, 316 F.3d 18, 23 (1st Cir. 2002). "Temporal proximity can create an inference of causation in the proper case." Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 84–85 (1st Cir. 2006) (citing Wyatt v. Bos., 35 F.3d 13, 16 (1st Cir. 1994)). An inference of causation is supported by a demonstration that the employer "knew of the . . . protected conduct when [it] decided to take the adverse employment action." Pomales, 447 F.3d at 85. Causation is more easily inferred when "the employer's knowledge of the protected activity was close in time to the employer's adverse action." Wyatt, 35 F.3d at 16.

Here, there is no dispute that the purported protected activity and the allegedly retaliatory emails were temporally close to one another. The emails (1) were sent during the DOL investigation, (2) acknowledge the investigation, past testimony, and potential future testimony, and (3) even explicitly state that they were sent in response to investigatory developments. [Compl. ¶ 55; ECF No. 10-2 ("We had thought we were in the final stages weeks ago, but it appears notifications may have gone out again."); ECF No. 10-3 ("We had thought [DOL] were

---

[4] The Court notes that Plaintiff has also alleged that the emails did, in fact, dissuade employees from speaking freely with DOL investigators, [Compl. ¶ 58], which lends further support to this conclusion.

done and now [Webb] hear[d] of more notifications going out.")]. The Court construes the text of these emails in the light most favorable to Plaintiff and makes reasonable inferences in the Plaintiff's favor. Elsevier, 732 F.3d at 80. Webb argues that there is "no basis here for a reasoned inference that retaliatory animus motivated Webb to send the emails." [ECF No. 10 at 18].[5] Plaintiff's allegations, however, in combination with the emails themselves and the inference of causation based on temporal proximity, are sufficient, at this stage, to plausibly suggest causation.[6] Webb's arguments may well carry the day at summary judgment, but Plaintiff has done enough to withstand a motion to dismiss.

## IV.     CONCLUSION

Accordingly, for the reasons set forth above, Webb's motion to dismiss, [ECF No. 9], is DENIED.

**SO ORDERED**

April 21, 2021                                                                 /s/ Allison D. Burroughs
                                                                                          ALLISON D. BURROUGHS
                                                                                          U.S. DISTRICT JUDGE

---

[5] Webb's reliance on Germanowski v. Harris, 854 F.3d 68 (1st Cir. 2017) is misplaced. The court in Germanowski acknowledged that temporal proximity enhances plausibility, id. at 74–75, but said that the plausibility analysis was complicated by other factors, which are not present here.

[6] Webb's contention that the emails were motivated by sound business judgment, [ECF No. 10 at 18], does not require dismissal at this early stage. The emails must be viewed in the light most favorable to Plaintiff, and he has plausibly alleged a reading of the emails that suggests a causal link between protected activity and the emails. At this stage, "circumstantial evidence must, at times, suffice," Ocasio-Hernández, 640 F.3d at 17, and there is no probability requirement, Twombly, 550 U.S. at 556. Instead, the Court "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" unlawful conduct. Id.; Ocasio-Hernández, 640 F.3d at 17.