UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JULIE A. SU, Acting Secretary of Labor, United States Department of Labor, | |
| Plaintiff, | Civil Action No. 1:20-cv-11450-AK |
| v. | |
| F.W. WEBB COMPANY, | |
| Defendant. | |

## DEFENDANT FW WEBB COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ANSWERS TO DAMAGES INTERROGATORIES

I.      **INTRODUCTION**

Defendant F.W. Webb Company ("F.W. Webb") submits this Memorandum of Law in support of its Motion to Compel Answer to Damages Interrogatories.  F.W. Webb moves pursuant to F.R.C.P. 26(e) and 37 to compel the Plaintiff Julie A. Su, Acting Secretary of Labor, United States Department of Labor (the "DOL") to provide answers to two F.W. Webb's interrogatories related to the calculation of damages. The DOL provided no answer at all to those interrogatories other than to direct F.W. Webb to thousands of pages of documents.  In this action, the DOL is seeking substantial monetary damages based on its allegation that F.W. Webb violated the Fair Labor Standards Act ("FLSA") by failing to pay overtime to a category of approximately 600 employees referred to as inside salespersons ("Inside Salespersons").  The DOL maintains that because of the failure to pay overtime to Inside Salespersons, F.W. Webb owes millions of dollars in back wages.  However, in answering F.W. Webb's interrogatories, the DOL refused to describe

or provide any details regarding the methodology, assumptions, and process used to calculate and determine the amount of back wages purportedly owed.  Instead, the DOL shirked its obligations by directing F.W. Webb to hundreds of pages of dense raw data and a narrative DOL created during its investigation, which does not provide clarity on its damage calculation.[1]  Without such an explanation, information routinely provided to defendants in civil litigation, F.W. Webb is left in the dark about the foundation of the DOL's damages and cannot analyze and evaluate the calculations in preparation of its defense.  The motion to compel further answers to these damages interrogatories is timely because F.W. Webb is not seeking new discovery, only a complete and sufficient answer to outstanding discovery, and compelling a complete answer requires a resolution of the DOL's objections to these interrogatories based on the informer's privilege, and a motion addressing the informer's privilege issue is now before the court. Because of the obstacle to procuring a complete answer to interrogatories presented by the DOL's assertion of that privilege, seeking further answers before now would have been futile.   With the resolution of the informers privilege imminent, the court should compel the DOL to provide complete answers detailing its back wage calculations.

## II.    BRIEF DESCRIPTION OF THE CASE

The DOL instituted this action against F.W. Webb for allegedly violating the FLSA by failing to pay overtime or maintain timekeeping records for more than 600 individuals categorized as Inside Salespersons.  F.W. Webb contends it is fully compliant with the FLSA, as the Inside Salespersons are exempt from the FLSA's overtime and recordkeeping requirements.

---

[1] Attached hereto as **<u>Exhibit A</u>** is a true and accurate copy of the DOL's Answers to Interrogatories.

F.W. Webb is engaged in the distribution and sale of plumbing, heating, pipe, HVAC, pumps and industrial products and systems. The Inside Salespersons work for F.W. Webb at more than ninety locations (F.W. Webb branches) in nine states. Despite the inclusion of the word "sales" in their title, they are highly trained and skilled employees whose primary duties include advising customers concerning what equipment and systems will meet specified needs and criteria, performing technical calculations to assist in rendering such advice, gathering marketplace information to assist in maintaining competitive advantages and assisting customers in preparing bids to third parties. In addition, the Inside Salespersons set pricing based on customer and market conditions, directly impacting F.W. Webb's profitability. They interface directly with F.W. Webb customers, other Inside Salespersons, and outside salespersons on F.W. Webb's various business lines (i.e., HVAC, process controls, waterworks, refrigeration). They are integral to F.W. Webb's business operations and customer goodwill.[2]

F.W. Webb pays Inside Salespersons a salary (currently ranging from $50,003 to $349,000 annually) and treats them as exempt employees with flexible working hours. Inside Salespersons can alter their daily work schedule for personal needs and the location's needs without any adjustment to their weekly salaries based on working fewer hours than scheduled. On any given day or week, an Inside Salesperson may arrive later than the location's stated hours, leave early, and generally tend to personal affairs during business hours. At the branch level, Inside Salespersons have the discretion to work with others to ensure adequate coverage for all hours of

---

[2] As noted in F. W. Webb's summary judgment briefs and oral argument, F.W. Webb's Inside Salespersons perform the same kind of duties that were performed by the sales force in *John Alden Life Ins. Co.*, 126 F.3d 1 (1st Cir. 1997) which the First Circuit held rendered them exempt employees.

branch operations.  Other than for its Maine locations, F.W. Webb does not keep track of the Inside Salespersons' daily hours or centralized records of vacation and sick days.[3]

## III.    THE INTERROGATORIES

On September 3, 2021, F.W. Webb propounded its first set of interrogatories on the DOL. Interrogatory No. 17 asked the DOL to "Please state the amount and methodology of the Department of Labor's back wage calculation for each Inside Salesperson, including in your response:

    a.  the daily hours worked by each Inside Salesperson;

    b.  the number of Saturday hours worked each week;

    c.  the number of vacation hours taken each week;

    d.  the number of sick time hours taken each week."

Similarly, Interrogatory No. 19 asked the DOL to "Please identify and describe in detail the method and process used to calculate and determine the back wages the Department of Labor alleges are due from the data obtained during the Investigation Period and to extrapolate that data to all locations and Inside Salespersons to calculate and determine the back wages the Department of Labor alleges are due to all Inside Salespersons at all Webb locations."[4]   It is a common

---

[3] The Maine Department of Labor, acting under a state statute similar to the FLSA, conducted an investigation to determine whether F.W. Webb Inside Salespersons were non-exempt.  At the end of the investigation, the Maine Department of Labor determined that the Inside Salespersons were exempt but required F.W. Webb to keep time records for those employees.  That is why Maine branches maintain such records.

[4] The Interrogatories define the word "Describe" as "to give an account in full detail and requires, but is not limited to, when used with respect to any act, action, accounting, activity, audit, practice, process, occurrence, occasion, course of conduct, happening, negotiation, relationship, scheme, communication, conference, discussion, development, service, transaction, instance, incident, or event: (a) The date; (b) The identity of each Person who performed any function or had any role in connection therewith or who has any knowledge thereof, together with a description of each such Person's function, role, or knowledge; (c) A detailed chronological account setting forth the substance; (d) The identity of each Document which refers thereto or

requirement that civil plaintiffs have to explain the sources of data employed, assumptions made, and methodology employed to arrive at damages.  It is essential information for a defendant to have to defend the damages claimed.  The DOL did not comply with this obligation but instead directed Webb to weed its way through an extensive and dense thicket of documents.

The DOL objected to both interrogatories based on the informer's privilege, arguing that answering the interrogatory "would reveal or tend to reveal the identity of confidential sources." Rather than providing an answer, the DOL referenced documents it produced and discovery responses.  Those documents included hundreds of pages of tables listing employees, asserted hours worked, and amounts due but provided no explanation of how any of the numbers on any of the tables were derived. Attached as **<u>Exhibit B</u>** are sample pages of what the DOL provided without explaining how they were created.  The DOL also referenced documents it relied on to make those calculations including employee interviews and responses to questionaries, a narrative generated during its investigation, job postings, information about Saturday work hours, company holidays, time records for its Maine locations, and raw data regarding employment information including names, location, start and end dates, starting biweekly pay, changes in pay and the date, vacation weeks and any disability/workers comp/military leave taken, but offers no explanation as to how those materials factored into the calculations.

The only insight into the calculations the DOL provided in its written answers is to state that it "did not calculate any back wages for employees for the full workweeks during the Investigation Period in which they were, based on information from Webb, on sick leave" and "did not take into account any hours of sick leave that employees may have taken in a particular

---

which was used, referred to, or prepared in the course or as a result thereof; and (e) The identity of each Communication which occurred in the course of the preparation thereof or which referred thereto.

workweek that amounted to less than the full week." See **Exhibit A**, No. 17. It offered no explanation as to how it factored in vacation time, or how or whether it accounted for the known fact that Inside Salespersons had a measure of freedom to set their own hours, features that can substantially affect calculations.

## IV.    ARGUMENT

### A. The DOL Must Provide Complete Answers to the Interrogatories.

Rule 33 of the Federal Rules of Civil Procedure allows any party to serve on any other party written interrogatories concerning matters within the scope of Rule 26(b) and requires that the responding party answer "fully."  The DOL's answers to Interrogatories Nos.  17 and 19 fall well short of "fully."  Indeed, it only provided information on how it factored sick time into the calculation.

During the meet and confer process the DOL's pointed to a narrative in a DOL log maintained during its investigation of F.W. Webb to suggest their document reference sufficiently answers the damage interrogatories.  That document does not come close curing the deficiency in the interrogatory answer.[5]  The narrative, in fact, raises more questions than it answers.  For example, the narrative states that the "[h]ours of work were reconstructed at 45 hours per week (not including Saturdays) based on interview statements."  Obviously, total hours worked is a bedrock data point for calculating damages.  Based in the statement in the narrative, it would appear that the DOL concluded that all of the Inside Salespersons worked 45 hours a week, although one cannot really tell.  If it is only a subset of those employees, F.W. Webb has no way of knowing.  Moreover, counting questionnaires where no conversation occurred, the DOL had contact with about 60 employees.  If, as the narrative suggests, the calculation was based on

---

[5] The narrative is attached as attached as **Exhibit C.**

interviews, something more had to be done to apply that limited data to calculate amounts that might be due to the entire group of inside salespersons. Webb cannot tell how the DOL reconstructed the weekly hours for the other 540 employees to whom DOL did not speak, based on information gathered from only about 10% of the total class. Did the DOL use a statistical analysis? Did the DOL rely on other documents? If so, which of the thousands of pages of documents the DOL references in their answer did it rely on? Perhaps the DOL did something else entirely. "Reconstruction" suggests creating a record that does not exist, but neither the interrogatory answer, nor the narrative, given any idea as to how the "reconstruction" was created.

In addition, the narrative fails to clearly describe the computation of Saturday time included in the calculation. After describing divergent information on Saturday work hours for different F.W. Webb branch locations, the DOL fails to state how the variations in Saturday's worked/not worked factored into the total hours per week and back wage calculation. The calculation for all Saturday shifts is expressed in the narrative as an "estimate" and is a round number of $90,000.00. The DOL provides no information on what data and by what calculations it used to develop this estimated figure.

The narrative also has a clear error at its core. It states that the DOL back wage calculations include back wages for not only Inside Salespersons, but for Commercial Quotes and Commercial Estimators, two categories of employees as to which the DOL has made no assertion of misclassification in this action. Further, in describing the calculation of back wages, the DOL states that it started with salary, but does not say what was used to derive the salary amount. There is also no explanation as to how the DOL accounted for vacation time, flexible work hours of Inside Salespersons and known practice of absenting themselves during the workday for personal errands and appointments, and variations between branch locations. Although F.W. Webb could

attempt to surmise what the DOL did, it should not  have to guess.  While the narrative suggests that DOL Wage Hour Investigator Jeannie Kruja did the calculations during the investigation in August 2019, the DOL does not identify who did the calculations as part of this litigation and if anyone else assisted Investigator Kruja in performing the calculations.

Overall, the narrative is insufficient to supplement for the DOL's failure to describe the methodology used in making its back wage calculations in its interrogatory answer.  The DOL still has not provided an explanation for how it determined the hours employees work or their pay rates. Despite being told by employees it interviewed that a feature of the Inside Salesperson job was the ability to arrive later than store start times, leave before closing and come and go during the day, the DOL did not state if it accounted for that feature and, if so, how it accounted for it.  Despite recognizing that the timing of vacations can have an impact on total hour calculations, the DOL does not explain how it addressed vacation time, how it managed variations across the more than ninety branches, and whether it extrapolated such information from any employee data (such as Maine) and, if so, the process of the extrapolation.

There is no justification for the DOL's failure to describe its computation process.  If such information is not disclosed, F.W. Webb would be severely prejudiced and left to speculate as to how the DOL calculated the alleged damages.  *See Tourangeau v. Nappi Distributors*, No. 2:20-CV-00012-JAW, 2023 WL 2072468, at *2 (D. Me. Feb. 17, 2023) (recognizing the significance of plaintiff's failure to provide an itemization and computation of damages in a lost wage claim and potential for prejudice in absence of disclosure); *Galenski Farm v. Nutrien Ag Sols., Inc.*, No. 3:20-CV-30016-MGM, 2022 WL 17094689, at *4 (D. Mass. Nov. 21, 2022) (finding response to interrogatory asking for computation of alleged damages satisfied where plaintiff explained the

methodology in its answer).  The DOL knows precisely who and how it calculated the back wages and should be required to provide an explanation.

### B. The DOL Cannot Specify Records as Responsive to the Interrogatories.

DOL cannot rely on its citation to its production of documents in lieu of narrative answers specifying its method of damages calculation.  In appropriate circumstances, Rule 33(d) allows a responding party to point to relevant documents instead of providing written narratives.  In this case, however, the DOL's responses did not satisfy the requirement of the rule.

To rely on Rule 33(d), a party "must satisfy four criteria: (1) it must affirm that the information sought by the requesting party is in fact in the specified records; (2) it must specify the actual documents where information will be found; (3) it must show that answering the interrogatory in a conventional manner would impose a burden on it; and (4) it must show that the burden of deriving the answer from the specified records will be substantially the same for both parties." *See United States ex rel.  Martino-Fleming v. S. Bay Mental Health Ctr., Inc.*, 332 FRD 1, 6 (D. Mass. 2019) (citing *Licensed 2 Thrill, LLC v. Rakuten, Inc.*, No. 13-cv-11257-DJC, 2015 WL 13376540, at *3 (D. Mass. Oct. 13, 2015)).  "Once the producing party satisfies these criteria, the burden shifts to the requesting party to establish that the burden of deriving the answers from the business records is not substantially the same for both parties." *Id.* (citing *Petroleum Ins. Agency, Inc. v. Hartford Accident & Indem. Co.*, 111 FRD 318, 320 (D. Mass. 1984)).

The DOL's answers to interrogatories do not meet the requirements of Rule 33(d).  While the DOL directs F.W. Webb to the Case File, Back Wage Computations, and Additional WHD Spreadsheets concerning back wage calculations, these documents consist of more than 3,000 pages.  Even if the identification of these records is considered sufficiently specific, they do not fully answer the interrogatory because, as previously noted, the documents fail to describe how

the DOL calculated its damages. The documents cited primarily contain raw data and tables for employees, including the total hours worked per workweek, rate of pay per week, a coefficient and the amount due to the employee. *See* **Exhibit B**. The narrative developed during the DOL investigation in August 2019 does not provide a sufficient explanation of the damages computation. *See* **Exhibit C**. In reviewing this information, it still remains unclear how the DOL determined the number of hours per week, rate of pay, how it accounted for vacation time, how it addressed branch variation, and whether any data was extrapolated.

A damage interrogatory properly seeks the thinking behind a plaintiff's damage calculation and a defendant is entitled to an answer, not a list of documents from which an answer might be divined. Moreover, providing a written answer to Interrogatory No. 17 and Interrogatory No. 19 would not burden the DOL significantly. The DOL knows the methods and processes it used in calculating back wages. It is not overly burdensome to require that they provide that explanation in a paragraph or two. The burden of deriving the calculation method from DOL's records is not substantially the same for both parties. The DOL knows what it did. F.W. Webb does not. F.W. Webb would have to attempt to derive the methodology by reverse engineering the data provided in DOL's document production. Any result or conclusion reached by F.W. Webb would be little better than a guess. F.W. Webb's inquiry on how the DOL calculated the damages it claims in this case is standard fare in civil cases in the federal and state courts. There is no reason for the DOL's "hide the ball" approach to interrogatories to describe its method and process to arrive at its conclusions.

To enable F.W. Webb to understand the underpinnings of the DOL's damage calculation and to allow it to prepare, the DOL should be directed to provide an answer that fully responds to the interrogatories by explaining how it computed the back wage damages, which includes but is

not limited information on what method the DOL used and on what data DOL relied to reconstruct the 45 hour per week conclusion as reflected in the narrative, how the DOL accounted for time Inside Salespersons worked on Saturdays, how the DOL determined the salary for each Inside Salespersons, how the DOL accounted for vacation time and flexible work hours, how the DOL addressed variations between branches, and what assumptions the DOL made in preparing the calculations. F.W. Webb cannot ascertain all this information by merely reviewing the records. Therefore, the DOL should be required to supplement its answers to provide a complete explanation of its damage calculations.

### C. The Motion to Compel is Timely.

Pursuant to Federal Rule of Civil Procedure 26(e), the DOL has an obligation to supplement its answer to the damages interrogatories where its response is incomplete and where additional information regarding the methodology of its damages calculation has not been made known to F.W. Webb. The motion seeks to compel DOL to provide a sufficient answer to an outstanding discovery request, it does not seek new discovery.

The motion is also timely because, among other grounds, the DOL justified its failure to answer the damage-based interrogatories by asserting the informer's privilege. Late last year, F.W. Webb moved for an order compelling discovery the DOL withheld pursuant to that privilege. On November 4, 2022, while the case was still in the discovery phase, this court denied that motion without prejudice, explicitly recognizing F.W. Webb's right to renew the motion post-discovery. (ECF No. 59). F.W. Webb did so on April 13, 2023. (ECF No. 97). As argued in Webb's renewed motion, it is now the appropriate time to provide relief from the informer privilege claim. With that relief, it is time for the DOL to answer the damages interrogatories fully. Any earlier effort

would likely have been futile with the informer's privilege as a barrier, and requiring a proper response now imposes no prejudice or hardship on the DOL.

## V.    CONCLUSION

For the foregoing reasons, Defendant F.W. Webb Company respectfully requests that the Court ALLOW its Motion to Compel and direct the DOL to provide complete answers to Interrogatory No. 17 and Interrogatory No. 19, including a full explanation of the process, methodologies and assumptions it employed to calculate damages.

**DEFENDANT,**
**FW WEBB COMPANY**

By its attorneys,

*/s/ Gary S. Matsko*_____
Gary M. Feldman, BBO #162070
Gary S. Matsko, BBO #324640
Lawrence J. Casey, B.B.O. #555766
Courtney Simmons, B.B.O. # 694861
DAVIS, MALM & D'AGOSTINE, P.C.
One Boston Place
Boston, MA  02108
(617) 367-2500
gfeldman@davismalm.com
gmatsko@davismalm.com
lcasey@davismalm.com
csimmons@davismalm.com

Dated:  May 15, 2023

## <u>CERTIFICATE OF SERVICE</u>

I, Courtney A. Simmons, Esq. hereby certify that a true copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this date, May 15, 2023.

*/s/ Courtney Simmons*

Courtney A. Simmons

13